IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

COLUMBUS LIGHT AND WATER
DEPARTMENT                                                              PLAINTIFF

v.                                                   Civil Cause No. 1:18-cv-00031-GHD-DAS

UMR, INC., and
JOHN DOES 1-5                                                          DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Columbus Light and Water Department ("the Department") sues Defendant UMR, Inc., the Deparment's health insurance claims administrator, for allegedly paying out claims for non-covered persons in breach of an agreement between the two. UMR filed a motion for judgment on the pleadings [6] arguing that the agreement requires the Department to notify UMR what persons were covered under the plan, the complaint does not state the Department informed UMR the persons were no longer covered, and therefore, the complaint does not allege that a breach occurred. Having considered the matter, the Court finds the motion should be granted.

### Background

In 2016, the Department established a self-funded health insurance plan for its employees and contracted with UMR to administer the plan. Comp. [2] ¶ 3. According to the Department, children of employees were covered under the plan until their 26th birthday[1]. *Id.* ¶ 5.

Nonetheless, in March 2017, a 26 year old child dependent of one of the Department's employees made a claim for insurance benefits under the plan. *Id.* ¶¶ 7-8. The claim submission

---

[1] As discussed below, the Court is unable to confirm who is and is not eligible under the plan because the full contract has not been attached to the pleadings.

formprovided to UMR by the claimant contained the claimant's date of birth. *Id.* ¶ 8. UMR recommended the claim be paid, even though the claimant was no longer covered under the policy. *Id.* ¶ 9.

The Department sought reimbursement from UMR for this claim and others, which UMR refused to provide. *Id.* ¶ 18–19. The Department brought this action in state court for 1) breach of contract, negligence, and breach of duty against UMR for recommending the Department pay claims it knew or should have known were ineligible; 2) conversion for paying ineligible claims from the Department's self-funded account and refusing to return those funds to the account; and 3) breach of good faith and fair dealing for paying claims UMR knew were ineligible and refusing to reimburse the Department .[2] UMR timely removed based on diversity subject matter jurisdiction and filed the present motion. The Department has responded.[3] The matter is now ripe for review.

## Jurisdiction

Because it is not readily apparent from the facts of the complaint, the Court first takes a moment to examine whether it has jurisdiction to decide this matter. *Giannakos v. M/V Bravo Trader*, 762F.2d 1295, 1296 (5th Cir. 1985) ("Therefore, United States District Courts and Courts of Appeals have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking.") For this

---

[2] It is unclear from the complaint the manner in which insurance payments were disbursed from the account: whether UMR would make recommendations to the Department and the Department would disburse payments; or whether UMR had authority to disburse payments from the account itself. For example, the complaint states that UMR "recommended the various amounts be paid by the [Department]" and "[The Department] did pay two separate amounts for claims which should have been disqualified," while also stating that "UMR did make payments to what should have been a disqualified claim." Compl. ¶¶ 12, 17. A review of the Administrative Services Agreement shows that the Department was required to fund an account and that UMR would have authority to make benefits payments from that account. Administrative Services Agreement [4-1], at p. 9.

[3] The Department filed its response 35 days after UMR filed its motion. The Court refers counsel for the Department to L.U. CIV. R. 7(b)(4) which provides that "Counsel for respondent must, *within fourteen days* after service of movant's motion and memorandum brief, file a response and memorandum brief in support of the response."

2

Court to have diversity subject matter jurisdiction, the parties must be diverse and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). The Court is satisfied that the parties are diverse. The Department is a subsidiary of the city of Columbus, Mississippi. Compl. ¶ 1. As a political subdivision of the state of Mississippi, it is a citizen of Mississippi for purposes of establishing diversity jurisdiction. *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973). UMR is a corporation organized under the laws of Delaware with its principal place of business in Wisconsin. Compl. ¶ 2. It is, therefore, a citizen of Wisconsin for purposes of establishing diversity jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

The amount in controversy requirement may be satisfied in two ways. First, it can be established if the removing party shows that 'it is facially apparent' from the plaintiffs' complaint that their 'claims are likely above [$75,000].'" *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 639 (5th Cir.2003) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)). It is not facially apparent from the complaint that the Department's claims exceed $75,000. The complaint alleges only one incident where UMR recommended the Department pay an ineligible claim. Compl. ¶¶ 7–15. The complaint does not state the amount of money the Department paid out for this claim nor the total amount of money it believes UMR should reimburse it. Thus, UMR must establish jurisdiction under the second method: "by setting forth the facts—[either] in the removal petition [or] by affidavit—that support a finding of the requisite amount." *Allen*, 73 F.3d at 1135.

UMR has attached to its removal petition two letters from the Department's counsel claiming that the Department's damages were "at least" $98,886.94 and demanding that UMR pay that amount to the Department or litigation would ensue. *See* October 17, 2017 Letter [1-2]; November 1, 2017 Letter [1-3]. Pre–suit demand letters which demand more than $75,000 can establish that

the plaintiff is seeking more than $75,000. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1254 (5th Cir.1998) (examining the plaintiffs' pre–complaint demand letters to determine whether a claim for declaratory relief satisfied the requisite amount in controversy); *Molina v. Wal-Mart Stores Texas, L.P.*, 535 F. Supp. 2d 805, 808 (W.D. Tex. 2008) (holding pre–suit letter demanding $100,000 was evidence that the amount in controversy exceeded $75,000). Because these letters show that the Department is seeking more than $75,000, the amount in controversy requirement is met. The Court is satisfied that it has subject matter jurisdiction over these claims.

### 12(c) Judgment on the Pleadings Standard

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion. See *Brown v. CitiMortgage, Inc.*, 472 Fed. App'x. 302, 303 (5th Cir. 2012) (per curiam) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367, at 509–10 (1990)).

In analyzing a 12(b)(6) motion, the court determines whether the complaint contains 'sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*,

550 U.S. at 556, 127 S. Ct. 1955). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152– 53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.' " *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

## Analysis

This case concerns a contract dispute. Thus, the Court should first determine what the contract requires in relation to the claims the Department has made. Under the Department's insurance plan, children of employees were eligible coverage until they turned 26. The dispute is ultimately about whether UMR had an independent duty to deny claims made by an employee's child who was at least 26 years old regardless of whether the Department informed UMR the child was no longer a participant in the plan.

UMR contends that the administrative service agreement between the parties places on the Department the duty to inform UMR of covered individuals on the plan. If the Department has previously informed UMR the dependent is covered under the plan, and the Department has not subsequently informed UMR the dependent is no longer covered, then, UMR argues, it is not required under the agreement to determine whether the dependent is eligible to receive benefits when the dependent makes a claim.

The Administrative Services Agreement the parties entered into provides that:

5

> **Section 2.5 Information Customer Provides to UMR.** Customer will tell UMR which of Customer's Employees, their dependents and/or other persons are Participants. This information must be accurate and provided to UMR a timely manner. UMR will accept eligibility data from Customer in the format described in Exhibit A-Statement of Work. Customer will notify UMR of any change to this information as soon as reasonably possible.
>
> UMR will be entitled to rely on the most current information in UMR's possession regarding eligibility of Participants in paying Plan benefits and providing other services under this Agreement. UMR will not be required to make retroactive eligibility changes, process or reprocess claims, but if UMR agrees to do so, additional fees may apply. UMR shall be entitled to rely upon any written or oral communication from Customer, its designated employees, agents or authorized representatives.

Administrative Services Agreement [4-1] § 2.5. A "Participant" is an "Employee dependent covered by the Plan." *Id.* at p. 1.

This provision imposes a duty on the Department to inform UMR of who is covered under the plan, and to inform UMR when that information changes. It further provides that UMR, in paying plan benefits, may use the most recent information provided to it by the Department to determine whether a person seeking insurance benefits should receive them.

The Department points to no provision within the agreement that requires UMR to determine whether a dependent was too old to receive benefits of the plan when reviewing claims. Rather, the Department argues that because UMR had a "duty to administer the plan" then UMR had a duty to determine whether claimants were eligible under the plan. The Department further argues that UMR knew the child who made the claim was not eligible because the child's date of birth was listed on the claims form. However, the agreement provides that "UMR is not the Plan Administrator of the Plan," and that UMR has a fiduciary responsibility for administrative services only to the "Extent the agreement specifically requires." *Id.* § 2.1. The agreement requires the

Department to inform UMR who is covered, and entitles UMR to make eligibility determinations on that information.

The Court further notes that nothing in the agreement presented to this Court specifies that a 26 year old dependent of an employee is ineligible to be covered. Despite citations and references contained within the Department's complaint and within the Administrative Service agreement attached to UMR's answer, neither party attached the actual Plan documents to a pleading. Thus, the Court cannot consider what the Plan documents may contain under a 12(c) judgment on the pleadings motion. Nonetheless, as discussed above, the Administrative Services Agreement places with the Department the burden of informing UMR who is covered under the Plan, and allowing UMR to rely on that information when paying benefits. Thus, it is unnecessary to consider what the Plan says about this matter as far as this motion is concerned.

With this in mind, the Court turns to the Department's causes of action. The Department first sues for breach of contract and negligence because UMR recommended it pay, and the Department did pay for a claim by a dependent who was not covered under the policy. "Under Delaware law[4], the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages." *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct.), *aff'd*, 886 A.2d 1278 (Del. 2005).[5] As discussed above, UMR did not have an obligation to determine whether a dependent claimant was a Participant of the plan. Rather, under the agreement, UMR relied on information provided by the Department as to who was covered. The complaint does not allege that the Department informed UMR that the

---

[4] The Administrative Services Agreement provides that "This Agreement is governed by the applicable laws of the State of Delaware." § 10.3

[5] The elements of a breach of contract claim under Mississippi law are substantially similar. *See Maness v. K & A Enterprises of Mississippi, LLC*, ___So.3d___, 2018 WL 774010 at * 8 (Miss. 2018) (stating elements as "(1) the existence of a valid and binding contract and and (2) a showing that the defendant has broken, or breached it.") (internal quotations omitted).

claimant was no longer a Participant. Therefore, the complaint fails to allege either a contractual obligation owed by UMR or a breach of the obligation by UMR. Because the complaint fails to allege a breach of any duty, the Department's negligence claim is also insufficient. *See Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 250 (Del. 2010) (stating the elements of negligence as "duty, breach, causation, and harm").[6]

The Department also sues for a breach of good faith and fair dealing. The covenant of good faith and fair dealing "inheres in every contract and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Kuroda v. SPJS Holdings*, LLC, 971 A.2d 872, 888 (Del. Ch. 2009). However, the covenant "cannot be invoked to override the express terms of the contract." *Id.*[7] The Department asks this Court to find that UMR had a duty to determine who was a Participant in the plan. The agreement imposes that duty on the Department. The Department cannot allege a breach of the covenant by claiming UMR breached a duty owed by the Department. Nor can UMR's failure to refund the claims paid for non–covered dependents constitute such a breach because the agreement specifically states that "UMR will not be required to make retroactive eligibility changes, process or reprocess claims . . ." Administrative Services Agreement § 2.5. Absent facts that show the Department informed UMR the dependent was no

---

[6] The elements of negligence under Mississippi law are identical. *See Sanderson Farms, Inc. v. McCullough* 212 So.3d 69, 76 (Miss. 2017).

[7] Again, Mississippi law is similar. *See, e.g. Furniture & Accessory Retail Grp., Inc. v. Lane Furniture Indus., Inc.*, No. 1:10-CV-213-SA-JAD, 2011 WL 2295112, at *4 (N.D. Miss. June 8, 2011), *aff'd*, 477 F. App'x 172 (5th Cir. 2012) ("Thus, it is said that generally, as a matter of law, when a party acts in accordance with the express terms of a contract, the implied covenants of good faith and fair dealing have not been violated.") (internal quotations omitted).

longer a Participant, and facts that show UMR paid the benefits anyway, the complaint does not plead a breach of the covenant of good faith and fair dealing.

Finally, the Department sues for conversion because UMR paid the ineligible claims from the Department's account, and then refused to refund the Department. "Conversion is an 'act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it.'" *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (quoting *Drug, Inc. v. Hunt* 168 A. 87 at 93 (Del. 1933)). Under Delaware law, there is a "general rule prohibiting claims for the conversion of money." *Kuroda*, 971 A.2d at 889. A conversion claim for money lies "only when it can be described or identified as a specific chattel, but not where an indebtedness may be discharged by the payment of money generally." *Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988).

The Department's claim is insufficient under Delaware law because it does not identify certain monies as a specific chattel to be returned. Rather the Department seeks general damages to satisfy the alleged breach.

The courts of Mississippi have not expressly disavowed general conversion claims for money. However, under Mississippi law, like Delaware law, the plaintiff must show "proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Cmty. Bank, Ellisville, Miss. V. Courtney*, 884 So. 2d 767, 772–73 (Miss. 2004); *Arnold*, 678 A.2d at 536.

The agreement provided that UMR would have authority use the self-funded account to pay benefits. Because the Department has failed to state that a breach occurred when UMR paid those claims, it has failed to state that a wrongful or unauthorized use or detention of the funds

9

occurred when UMR paid the claims. Thus, the complaint fails under both Delaware and Mississippi law. The conversion claim must be dismissed.

## Conclusion

The Department fails to allege facts that could establish UMR breached a duty it owed to the Department. The Department also fails to allege facts that could establish UMR breached the covenant of good faith and fair dealing. Finally, the Department fails to allege facts that support a conversion claim for money. For these reasons, UMR's motion for a judgment on the pleadings should be granted, and the Departments claims dismissed.

An order in accordance with this opinion shall issue.

This, the 7th day of May, 2018.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE